eFiled in the Office of Clerk of Court, Orange County Florida 2009 Jun 05 05:36 PM Lydia Gardner

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

| | | |
|---|---|---|
| Jennifer Mendoza, on behalf of herself and all others similarly situated, | ) ) ) ) | Case No. 48-2007-CA-000329-O Division 34 |
| Plaintiff, | ) ) | |
| v. | ) ) | CLASS REPRESENTATION |
| Bank of America, N.A.(USA), a/k/a FIA Card Services, N. A., | ) ) ) | |
| Defendant. | ) ) | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW PLAINTIFF, JENNIFER MENDOZA, by and through her undersigned counsel, on behalf of herself and all others similarly situated, and sues Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., for damages, as follows:

### JURISDICTION

1.    This is an action for damages where the matter in controversy exceeds $15,000, exclusive of interest, attorneys' fees and costs.

### VENUE

2.    Venue is in this Court.

### CONDITIONS PRECEDENT

3.    All conditions precedent to the filing of this suit, if any, have been performed have occurred or have been waived.

## PARTIES

4.      Plaintiff Jennifer Mendoza is a resident of Orange County, Florida.

5.      Defendant Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., is a national banking association, organized and existing under the laws of the State of Delaware, is registered and authorized to do business in Florida, and does business in Orange County, Florida.

## THE CONTRACT

6.      Defendant issued a credit card to Plaintiff.

7.      Plaintiff accepted and used the credit card.

8.      By Plaintiff's acceptance and use of the credit card a contractual relation arose between Plaintiff and Defendant.

9.      The contractual relation between Plaintiff and Defendant is primarily governed by the CARDHOLDER AGREEMENT (the Agreement), copy of which is attached hereto as Exhibit 1.

10.     Section 1.3.10 of the Agreement defines "Business Day" as "Monday through Friday, excluding federal bank holidays."

11.     The phrase "Business Day" is not used anywhere in the Agreement as pertains to the allegations of this complaint.

12.     The phrase "Business Day" is used in the numbered sections of the Agreement only twice, to wit: on the cited

Section 1.3.10 defining it and on Section 7.6 titled "Stopping Payment on Checks."

13.   Section 7.6 of the Agreement titled "Stopping Payment on Checks," has no bearing whatsoever in this case.

14.   The phrase "Business Day" is used again in the "Billing Rights Summary" following the numbered sections of the Agreement in a part referring to stopping a payment, which has no bearing whatsoever in this case.

15.   Several clauses of the Agreement, including section 3.2, refer to "day."

16.   "Day" is not defined in the Agreement.

17.   There is nothing in the Agreement indicating that "day" is anything other than a natural calendar day.

18.   "Day" is defined in dictionaries as a natural 24 hour period of rotation of the Earth.

19.   Several clauses of the Agreement, including section 3.2, refer to "days."

20.   "Days" is not defined in the Agreement.

21.   There is nothing in the Agreement indicating that "days" is anything other than more than one natural calendar day.

22.   "Days" is defined in dictionaries as the plural of a natural 24 hour period of rotation of the Earth.

23.    Several clause of the Agreement, including section 4.1.2, refer to "Payment Due Date."

24.    "Payment Due Date" is not defined in the Agreement.

25.    There is nothing in the Agreement indicating that "Payment Due Date" has any meaning other than the one given to it in the English language.

26.    Section 6.1 of the Agreement states that "we (Defendant) will credit your (Plaintiff's) payment to your (Plaintiff's) Account upon receipt."

27.    There is nothing in the Agreement indicating that the phrase "we will credit your payment to your Account upon receipt" has any meaning other than the one given to it in the English language.

28.    Section 6.3 of the Agreement states "[y]ou (Plaintiff) will pay at least the Minimum Payment Due … by the Payment Due Date on you Statement."

29.    "Statement" is defined in Section 1.3.7 of the Agreement as "an Account billing statement."

30.    Plaintiff received from Defendant monthly Statements, copy of one of which is attached hereto as Exhibit 2.

31.    The Agreement does not define how or where the payment contemplated in Section 6.3 is to be made.

32.    Defendant recognizes four alternate means of payment, to wit: in person, by mail, by telephone and online.

33.    Nowhere in the Agreement or the Statement does it state that a payment in person at one of Defendant's locations on a Saturday is not a payment that will be credited to Plaintiff's account "upon receipt" as provided in section 6.1 of the Agreement.

34.    Nowhere in the Agreement or the Statement does it state that a Saturday is not a "day" under the Agreement.

35.    Nowhere in the Agreement or the Statement does it state that the payment by Plaintiff has to be made on a "Business Day."

36.    Nowhere in the Agreement or Statement does it state that if the "Payment Due Date" falls on a Saturday then the payment must be made before the Saturday.

37.    Nowhere in the Agreement or Statement does it state that if the payment is made in person at one of Defendant's locations on a Saturday then the payment will not be credited upon receipt as provided in section 6.1 of the Agreement.

38.    Nowhere in the Agreement or Statement does it state that if the payment is made in person at one of Defendant's locations on a Saturday then the payment will not be credited until the next "Business Day."

## THE PAYMENT

39.     Defendant had and has locations in Orange County, Florida, and throughout the United States, open to the public on Saturdays where Plaintiff and others similarly situated could make and in fact made payments in person to their credit card accounts, which payments were received by Defendant.

40.     Plaintiff made a payment in person at one of Defendant's locations in Orange County, Florida, on a Saturday, July 2, 2005.

## THE WRONG

41.     Defendant did not credit "upon receipt" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday.

42.     Defendant did not credit until the next "Business Day" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday.

43.     Defendant's failure to credit "upon receipt" the payment made by Plaintiff in person at one of Defendant's locations on a Saturday is a breach of Defendant's contractual covenant to credit Plaintiff's account "upon receipt" of the payment as provided in section 6.1 of the Agreement.

44.     Defendant misled Plaintiff into believing that Plaintiff's payment made in person at one of Defendant's

locations on a Saturday would be credited to Plaintiff's account "upon receipt."

45.    Defendant's breach of contract and misleading of Plaintiff as detailed above is an unfair and deceptive trade practice of Defendant.

## THE DAMAGES

46.    Defendant's breach of its contract with Plaintiff, and Defendant's misleading, unfair and deceptive trade practice, has directly and proximately caused damages to Plaintiff in that it caused Plaintiff to be found late in the payment, be imposed a late payment fee, have her interest rate on the credit card balance increased, have her interest rate on subsequent credit card charges increased, or have a negative entry into her credit history, all of which caused her monetary losses.

47.    Defendant has equally breached its contract, mislead and incurred in the unfair and deceptive trade practice with all others similarly situated with Plaintiff who made payments to Defendant on their credit card accounts on any given day but whose payments were not credited "upon receipt," and who, as a direct and proximate result thereof, suffered damages similar to those of Plaintiff described above.

## ATTORNEYS' FEES

48.   Plaintiff has become obligated to pay attorneys' fees to her counsel and to incur in costs for this litigation.

## GOVERNING LAW

49.   Section 7.18 of the Agreement establishes that the Agreement "is governed by applicable Arizona and Federal Law."

50.   Under Federal Law, the regulations of the Office of the Comptroller of the Currency of the United States establish that state contract and tort claims are not preempted by Federal Law.   See, Applicability of State Law to National Bank Operations, 12 C.F.R. §7.4009(c)(2009).   Specifically, Section 7.4009(c) states that:

> State laws on the following subjects are not inconsistent with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers:
>
> (1) Contracts;
> (2) Torts;
> (3) Criminal law;
> (4) Rights to collect debts;
> (5) Acquisition and transfer of property;
> (6) Taxation;
> (7) Zoning; and
> (8) Any other law the effect of which the OCC determines to be incidental to the exercise of national bank powers or otherwise consistent with the powers set out in paragraph (a) of this section.

Thus, according to the OCC regulations, Plaintiff's contract and tort claims are not preempted by federal law.

51. Under Arizona Law, any clause in the Agreement purporting to prohibit a class action for a breach of the Agreement or to deny Plaintiff and all others similarly situated access to the courts in a class action to redress wrongs committed by Defendant under the Agreement, is unconscionable and of no legal force and effect. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388(Ariz. 1984).

## CLASS ACTION REPRESENTATION ALLEGATIONS

52. Plaintiff brings this action on behalf of herself and other individuals similarly situated. This action is maintainable as a class action pursuant to Florida Rules of Civil Procedure, Rule 1.220(b)(1) and 1.220(b)(2), or alternately, Rule 1.220(b)(3).

53. The class is defined as:

All credit card accounts obligors of Bank of America, N.A.(USA),a/k/a FIA Card Services, N.A., whose payments to their accounts were not credited to the accounts upon receipt, resulting in that the obligor was found late in the payment, was imposed a late payment fee, had his or her interest rate on the credit card balance increased, had his or her interest rate on subsequent credit card charges increased, or had a negative entry into his or her credit history.

54. The members of the class are so numerous that joiner of all members individually is impracticable. The exact number of the class members can be determined only by appropriate

discovery from Defendant. Plaintiff believes that the class exceeds 100,000 persons.

55. Plaintiff's claims are typical of the claims of the members of the class. Plaintiff will fairly and adequately protect and represent the interests of the members of the class, and Plaintiff, on behalf of herself and the class, has retained undersigned counsel who is experienced and competent in class actions.

56. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Since damages suffered by the individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation would make it virtually impossible for members of the class effectively to obtain individual redress for the wrongful conduct of Defendant, except by class action.

### COMMON QUESTION OF LAW AND FACT EXIST AS TO ALL MEMBERS OF THE CLASS AND PREDOMINATE OVER QUESTIONS SOLELY AFFECTING INDIVIDUAL MEMBERS OF THE CLASS

57. The questions of law and fact common to the class include, but are not limited to: whether the conduct of Defendant constitutes a breach of contract, violates the Federal Fair Credit Billing Act, is misleading, and is an unfair and deceptive trade practice.

58.    Furthermore, the prosecution of separate claims and defenses by individual members of the class would create a risk of either:

> a.   Inconsistent or varying adjudications concerning individual members which would establish an incompatible standard of conduct for the party opposing the class;
>
> b.   Adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudication, or substantially impair or impede the ability of other members of the class who are not parties to protect their interest; or
>
> c.   A further risk that many valid claims would not be prosecuted for the reason that the amounts of claims are less than the probable cost of litigation.

### Rule 1.220(a)(1)

59.    Upon information and belief, the class consists of tens of thousands of persons, making individual joinder of the class members impracticable.

### Rule 1.220(a)(2)

60.    There are questions of law and fact common to the class members.

61.    The common questions of law and fact predominate over any question that affects any one class member.

62.    Such common questions include, but are not limited to:

a.    Whether Defendant breached the terms of its contracts with the class members;

b.    Whether Defendant has violated the Federal Fair Credit Billing Act;

c.    Whether Defendant has violated the Florida or Arizona Unfair and Deceptive Trade Practices Act; and

d.    Whether Defendant's practices have caused the class members to suffer damages.

### Rule 1.220(a)(3)

63.   Plaintiff's claims are typical of those of the class members.

64.   Every class member has a tangible and legally protectable interest at stake in this action.

65.   Plaintiff's claims and the claims of the other class members have a common origin and share a common basis.

66.   Plaintiff's claims and the claims of the other class members arise from the same wrongful practices of Defendant.

67.   Plaintiff stated claims are typical of the claims of the other class members because Plaintiff has been a victim of the same alleged wrongful practices.

68.   Plaintiff and the other class members have the same remedial theory, seek the same relief, and are required to prove the same material and substantive facts.

69.   The claims and remedial theories of Plaintiff are sufficiently aligned with the interests of other class members

to ensure that the universal claims of the class will be prosecuted with diligence and care.

## Rule 1.220(a)(4)

70. Plaintiff is willing and able to serve the Court and the other class members in a representative capacity, and will undertake all of the obligations and duties material thereto.

71. Plaintiff will fairly and adequately protect the interests of the class members.

72. Plaintiff has no interest that is adverse to, or which is in direct conflict with, the interests of the other class members.

73. Plaintiff's self interests are co-extensive with, and not antagonistic to, those of the other class members.

74. Plaintiff will undertake to well and truly represent and protect the interests of the other class members.

75. Plaintiff has engaged the services of the undersigned counsel and law firm who are experienced in complex class action litigation, with specific experience in consumer protection class action litigation.

76. The undersigned counsel and law firm will adequately prosecute this action, and will assert, protect and otherwise well represent Plaintiff, and the other class members.

### Rule 1.220(b)(1)

77. Prosecution of separate actions by the individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interest of the other class members who are not parties to the action, or could substantially impair or impede the ability of other class members to protect their interests.

78. The prosecution of separate actions by the individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the class.

79. Incompatible standards and inconsistent or varying adjudications on what would be, essentially, the same facts, proof, and legal theories, would also create, and allow to exist, inconsistent and incompatible rights within the class.

### Rule 1.220(b)(2)

80. Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

### Rule 1.220(b)(3)

81.    The questions of law and fact common to the class members predominate over any questions affecting any individual class Member.

82.    A class action is superior to other available methods for the fair and efficient adjudication of this dispute because:

    a.    Claims by individual class members are impractical because the costs to pursue individual claims far exceed the value of what any individual class member has at stake;

    b.    Individual class members have no interest in prosecuting or controlling separate actions;

    c.    It is desirable to concentrate litigation of the class members' claims in this forum; and

    d.    The proposed class action is manageable.

### COUNT 1: BREACH OF CONTRACT

83.    Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

84.    Defendant entered into a standardized Agreement with Plaintiff, attached hereto as Exhibit 1.

85.    Said standardized Agreement provided that Defendant would credit Plaintiff's payments to her account upon receipt.

86.    Defendant breached the standardized Agreement by failing to credit Plaintiff's payments to her account upon receipt.

87. As a result of Defendant's failure to credit Plaintiff's payments to her account upon receipt, Plaintiff has suffered damages.

88. Pursuant to the terms of the standardized Agreement, the prevailing party is to this action is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for compensatory damages; pre-judgment and post-judgment interest; declaratory and injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

## COUNT 2: FEDERAL FAIR CREDIT BILLING ACT

89. Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

90. Defendant's conduct set forth above violates the Federal Fair Credit Billing Act.

91. Specifically, 15 U.S.C. § 1666c provides in relevant part:

> Prompt crediting of payments; imposition of finance charge. Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Board. Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form in the amount,

manner, location, and time indicated by the creditor to avoid the imposition thereof.

92.   The regulations of the Board, specifically 12 C.F.R. § 226.10, provide in part:

### Prompt crediting of payments.

(a)  General rule.   A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge or except as provided in paragraph (b) of this section.

(b) Specific requirements for payments. If a creditor specifies, on or with the periodic statement, requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the creditor shall credit the payment within 5 days of receipt.

93.   By failing to credit Plaintiff's account on the date that it received Plaintiff's payment, Defendant violated the above cited statute and regulation.

94.   As a result of Defendant's violation of the above cited statute and regulation, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for statutory damages pursuant to 15 U.S.C. §1640; compensatory damages; pre-judgment and post-judgment interest; declaratory and injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

## COUNT 3: DECEPTIVE AND UNFAIR TRADE PRACTICES

95.   Plaintiff and the other members of the class adopt and re-allege paragraphs 1-82 of this complaint.

96.   Defendant entered into a standardized Agreement with Plaintiff, attached hereto as Exhibit 1.

97.   Said standardized Agreement provided that Defendant would credit Plaintiff's payments to her account upon receipt.

98.   Defendant breached the standardized Agreement by failing to credit Plaintiff's payments to her account upon receipt.

99.   This breach of the standardized Agreement is Defendant's standard practice, and the same constitutes a misleading, unfair and deceptive trade practice.

100.  As a result of Defendant's failure to credit Plaintiff's payments to her account upon receipt, Plaintiff has suffered damages.

101.  Pursuant to the terms of the standardized Agreement, the prevailing party is to this action is entitled to reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands a determination that this cause of action may be maintained as a class action; judgment against Defendant for statutory damages; compensatory damages; pre-judgment and post-judgment interest; declaratory and

injunctive relief; costs; attorneys' fees; and any other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff and the other Class Members demand a trial by jury of all issues triable before a jury.

**I HEREBY CERTIFY** that on June 5, 2009, I electronically filed this document with the Clerk of the Court by using the Electronic Case Filing System which will send a notice of electronic filing to the following:

Tee Persad, Esq., Counsel for Plaintiff

Wallace Rudolph, Esq., Counsel for Plaintiff

Alberto E. Lugo-Janer, Esq., Counsel for Plaintiff

Christi R. Adams, Esq., Counsel for Defendant

**I FURTHER CERTIFY** that on June 5, 2009, I e-mailed copy of this document to:

William Peerce Howard, Esq., Co-Counsel for Plaintiff, at

WHoward@ForThePeople.com

Counsel for Plaintiff
**CPLS, P.A.**
Attorneys & Counselors at Law
201 East Pine Street, Suite 445
Orlando, FL 32801
Tel 407-647-7887
Fax 407-647-5396
www.cplspa.com
CPLS File No. 10-2


(Signed electronically)  Tee Persad

_____
Tee Persad, Esq.
Fla. Bar No. 0045594
attorneypersad@cplspa.com


(Signed electronically)  Wallace Rudolph

_____
Wallace Rudolph, Esq.
Fla. Bar No. 0488119
wrudolph@cplspa.com


(Signed electronically)  Alberto E. Lugo-Janer

_____
Alberto E. Lugo-Janer, Esq.
Florida Bar Number 0972592
Alugojaner@cplspa.com
lugojaner@earthlink.net

eFiled in the Office of Clerk of Court, Orange County Florida  2009 Jun 05 05:36 PM  Lydia Gardner

JENNIFER MENDOZA

Account Number:                    8400

## Your Bank of America Visa® Account

New Balance                    $269.29

| Total Credit Line | $250.00 | Available Credit | $0.00 |
| Cash Limit | $125.00 | Available Cash | $0.00 |
| Overlimit Amount | $0.00 | Billing Date | 07/07/05 |
| Minimum Payment Due | $51.66 | Payment Due Date | 08/01/05 |

24-Hour Customer Service          1.800.681.2803       Pay online! Visit
For Lost or Stolen Cards          1.800.848.6090       www.bankofamerica.com

**Transactions**   View recent transactions and pay your bill online at www.bankofamerica.com.

| POST. DATE | TRANS. DATE | REF. NO. | DESCRIPTION | AMOUNT CR=CREDIT |
|---|---|---|---|---|
| Jul 02 | Jul 02 | | LATE PAYMENT FEE | $35.00 |
| Jul 05 | Jul 05 | 18806005750070531463697 | FL Banking Center payment | CR $100.00 |
| Jul 07 | Jul 08 | 24455015187040005765795 | BRAVO SUPERMARKET      ORLANDO    FL | $3.79 |
| Jul 07 | Jul 07 | | OVERLIMIT FEE ASSESSED FOR JUL 02, 2005 | $35.00 |
| Jul 07 | Jul 07 | | PERIODIC FINANCE CHARGE | $8.86 |

## Account Summary

| Previous Balance | | $288.84 |
|---|---|---|
| Purchases | + | $3.79 |
| Cash Advances | + | $0.00 |
| Other Debits | + | $70.00 |
| Credits | - | $0.00 |
| FINANCE CHARGE | + | $8.66 |
| Payments | - | $100.00 |
| New Balance | ≈ | $269.29 |

## Finance Charge Summary

| | Corresponding APR | Daily (D) / Monthly (M) Periodic Rate | Average Daily Balance (ADB) | Minimum (M) / Periodic (P) Charge |
|---|---|---|---|---|
| Purchases | 27.990% | 0.07669%v D | $289.33 | $8.66 P |
| Cash | 27.990% | 0.07669%v D | $0.00 | $0.00 P |

**ANNUAL PERCENTAGE RATE 27.990%**                                    v=Variable

Your account balance is over its established credit line. Please remit the Minimum Payment Due
immediately or call our Collections Department at 1.800.236.6497.

## Customer Corner

In accordance with your Cardholder Agreement, your account will remain in Penalty Rate Pricing for going Overlimit. We look forward to returning your account to its Standard Contract Rates upon receiving six consecutive months of on-time payments without going overlimit.



EXHIBIT
2

Bank of America

18400

BANK OF AMERICA
PO BOX 650260
DALLAS  TX  75265-0260

JENNIFER MENDOZA
2680-1 SILVER HILLS DRIVE
ORLANDO, FL  32818



| | Payment Coupon |
|---|---|
| Account Num | 400 |
| Payment Due Date | 08/01/05 |
| Total Minimum Payment Due | $51.66 |

New Balance: $269.29

Amount Enclosed

Make check or money order payable to Bank of America.

This is an electronic reproduction of your statement and includes account information only.

eFiled in the Office of Clerk of Court, Orange County Florida 2009 Jun 05 05:36 PM Lydia Gardner

EXHIBIT

1

**Bank of America**

## CARDHOLDER AGREEMENT

### Section 1: INTRODUCTORY PROVISIONS

**1.1: Contents and Effectiveness of Agreement.** This Agreement governs your credit card account ("Account") with us. It consists of this document, an attached "Additional Disclosure" and other documents that we may refer to as part of this Agreement. The Agreement becomes effective and you agree to its terms by either using your Account or by not closing your Account within 3 days of receipt of this Agreement.

**1.2: Parties to Agreement.** "We," "us," and "our" refer to Bank of America, N.A. (USA). "You," "your," and "yours" refer to any person (a) whose name appears on a Card or Statement or who uses this Account, or (b) who otherwise agrees to be liable on the Account.

**1.3: Definitions.** In addition to other terms defined throughout the Agreement, the following terms have the meaning indicated in this Section:

**1.3.1:** "APR" means Annual Percentage Rate.

**1.3.2:** "Billing Cycle" means a period of about one month ending on a billing date.

**1.3.3:** "Card" means a Bank of America credit card issued on your Account.

**1.3.4:** "Check" means a check drawn on your Account.

**1.3.5:** "Margin" means the number of percentage points added to the Index to determine an APR.

**1.3.6:** "MasterCard" means MasterCard International, Inc.

**1.3.7:** "Statement" means an Account billing statement.

**1.3.8:** "Unauthorized Charge" means a transaction made on your Account by a person, other than any one of you, who does not have actual, implied, or apparent authority to make such transaction, and from which none of you receive any benefit.

**1.3.9:** "Visa" means Visa U.S.A. Inc.

**1.3.10:** "Business Day" means Monday through Friday, excluding federal bank holidays.

### Section 2: USE OF YOUR ACCOUNT

**2.1: Types of Transactions.** You may use your Account for the following types of consumer transactions:

**2.1.1: Purchases.** Purchase goods or services with your Card.

**2.1.2: Cash Advances.** Obtain cash from a participating financial institution or merchant ("Cash Disbursement") or from an ATM ("ATM Advance"), write a Check for any legal purpose ("Check Advance") or purchase money orders, travelers checks, foreign currency, lottery tickets, casino chips, racetrack wagers, vouchers redeemable for cash or other items readily convertible into cash ("Quasi Cash"), or transfer funds from your Account to your Bank of America personal checking account for overdraft protection ("Overdraft Protection").

**2.1.3: Balance Transfers.** Transfer balances to your Account from other creditors.

**2.2: Limitations on Use**

**2.2.1: General; Consumer Account.** In addition to any other contractual or legal restrictions, the use of your Account is limited as described below. Your Account is a consumer Account and should not be used for business purposes.

**2.2.2: Legal Transactions.** You will only use your Account for transactions that are legal where you conduct them. For example, Internet gambling transactions may be illegal in your state. Display of a payment card logo by an online merchant does not mean that an Internet transaction is legal where you conduct it. We may charge your account for such transactions. We will not be liable if you engage in an illegal transaction. We may deny authorization of any transactions identified as Internet gambling.

**2.2.3: Credit Line and Cash Limit.** Your Account has a credit line ("Line") shown on your card carrier or Statement. You will not allow your Account balance to exceed the

amount of this Line. If your Statement also shows a limit for Cash Advances ("Cash Limit"), you will not allow your Cash Advance balance to exceed your Cash Limit. We may change your Line or Cash Limit at any time. We may, but are not required to, approve transactions that exceed your available Line or Cash Limit.

**2.2.4: Authorizations.** Some transactions require our prior authorization. We may limit the number of authorizations we give in a day. We may deny authorization if you are in default (as defined in Section 7.12), if we suspect fraudulent activity or for other reasons. We are not liable for any failure to authorize a transaction. You are liable for any transaction we authorize even if we should not have authorized it because you are or would be in default as a result of the transaction.

**2.2.4.1: Internet Transactions:** If your card is a Visa branded card, then your card is automatically enrolled in the Verified by Visa program. In order to make transactions over the Internet merchants may request your Verified by Visa password to complete the transaction. If a password is not provided the merchant may deny the transaction. If the password is incorrect we may deny the transaction. You can select or change your password and view additional terms online at http://www.bankofamerica.com/creditcards/ and clicking on the Verified by Visa link. By allowing another to use your Verified by Visa password you are authorizing the transaction on your account.

**2.2.5: Unpaid Checks.** We may reject and return unpaid a Check you write because:

(a) Your available Line or Cash Limit has been or would be exceeded by paying the Check at the time it is presented to us;

(b) Your Check is post-dated. If a post-dated Check is paid, resulting in another check being returned or not paid, we are not responsible;

(c) The date of your Check is more than 6 months old;

(d) Your Account is closed or suspended;

(e) You are in default or would be so if we paid the Check;

(f) Your signature or the payee's name or endorsement is missing on the Check, or the Check appears altered.

If we pay any Check under any condition, you must pay us the amount of the Check plus applicable fees and charges unless such liability is precluded by law.

## Section 3: FINANCE CHARGES

**3.1: Grace Period.** We do not charge any periodic Finance Charges on your new Purchases if: (1) You pay your New Balance in full by your Payment Due Date, or (2) Your previous New Balance was zero or a credit balance. There is no grace period for Cash Advances and Balance Transfers.

**3.2: Periodic Finance Charge Calculation.** For each day in the Billing Cycle, we take your beginning balance, add any new transactions or other debits, and subtract any payments or other credits. This gives us that day's Daily Balance. We multiply this Daily Balance by the Daily Periodic Rate to get your Periodic Finance Charges for that day. We add these Periodic Finance Charges to your Daily Balance to get the beginning balance for the next day.

To get your total Periodic Finance Charges for that Billing Cycle, we add all the Daily Periodic Finance Charges and round the sum to the next highest cent. This amount is also equal to the Average Daily Balance multiplied by the Daily Periodic Rate and then multiplied by the number of days in the Billing Cycle. To determine the Average Daily Balance, we add all your Daily Balances and divide by the number of days in the Billing Cycle.

We do this calculation separately for each feature such as Purchases, Cash Advances, Balance Transfers or Promotional Balances. Periodic Finance Charges begin to accrue from the later of the transaction date or the billing date of the Statement on which the transaction appears.

**3.3: Periodic Rates and Annual Percentage Rates**

**3.3.1: Rates.** The Daily Periodic Rates and the corresponding Annual Percentage Rates for your Account are listed on the "Additional Disclosure." The Daily Periodic Rate is the corresponding Annual Percentage Rate divided by the number of days in a year rounded to the next highest hundred thousandth of a percentage point.

**3.3.2: Variable Rate Information.** One or more of the APRs described in your Additional Disclosure may vary with changes in the Prime Rate. All such variable APRs

are determined by adding the appropriate Margin, as set forth in your Additional Disclosure, to the Index. The Margin is the percentage that we add to the Index to calculate your APRs. The Index is determined on the last day of each month and is the highest prime rate published in the Money Rates section of The Wall Street Journal at any time within the immediately preceding three months (the "Index Date(s)"). This rate does not necessarily represent the lowest prime rate at Bank of America's lowest rate.

The variable Periodic Rates and corresponding Annual Percentage Rates will increase if the Index increases and decrease if the Index decreases. All rate changes take effect on the first day of the Billing Cycle that ends in the calendar month following the most recent Index Date. An increase to your Periodic Rate and the corresponding Annual Percentage Rate will increase the amount of Finance Charges on your Account and may also increase your Minimum Payment Due.

**3.4: Minimum Purchase Finance Charge.** Whenever the Purchase balance is subject to a periodic Finance Charge, we will charge the greater of that periodic Finance Charge or the Minimum Finance Charge for Purchases shown in the "Additional Disclosure".

**3.5: Cash Advance and Balance Transfer Fees.** For each Cash Advance, we will charge the Cash Advance Fees shown on the "Additional Disclosure," rounded to the next highest cent, and add the fee to the Cash Advance balance on the transaction date. Balance Transfers and Promotional Balances will also incur these Cash Advance Fees unless we state otherwise in our offer.

## Section 4: OTHER FEES AND CHARGES

**4.1: Types of Other Fees and Charges.** We will charge the following fees and other charges:

    **4.1.1: Annual Fee.** If an Annual Fee applies to your Account, it will be billed each year.

    **4.1.2: Late Payment Fee.** A Late Payment Fee if we do not receive at least the Minimum Payment Due by its Payment Due Date.

    **4.1.3: Overlimit Fee.** An Overlimit Fee if your Account exceeds its Line at any time during a Billing Cycle.

    **4.1.4: Returned Payment Fee.** A Returned Payment Fee for any payment on your Account that is returned to us unpaid.

    **4.1.5: Stop Payment Fee.** A Stop Payment Fee for any request made to stop payment on a Check unless we have posted the Check to your Account before your request.

    **4.1.6: Copy Charge.** A Copy Charge for a Statement, sales draft, Check, or other record of your Account other than for a billing dispute you may assert against us pursuant to applicable law.

    **4.1.7: Research Fee.** A Research Fee for our time researching something requested on your Account other than for a billing dispute you may assert against us pursuant to applicable law.

    **4.1.8: Photo Expressions Photo Change Fee.** If you have Photo Expressions on your Card, a Photo Change Fee for changing the photograph.

**4.2: Amount of Other Fees and Charges.** The amount of Other Fees and Charges are listed on the "Additional Disclosure" and added to the Purchase balance of the Account on the date they are assessed.

## Section 5: YOUR LIABILITY

**5.1: Liable Parties.** If your name appears on a Statement, our records show that you are liable for the full balance due on the Account. By using your Account or making a payment on the Account knowing that your name appears on any Statement, you agree that our records are accurate. In addition, you are liable for the full balance due on the Account if you have agreed to be liable (even if your name does not appear on a Statement). In each case described above, you will be individually and jointly liable ("Liable Party") for all credit extended on the Account (other than for Unauthorized Charges) including any Finance Charges, Other Fees and Charges, and expenses as provided in this Agreement. If your legal residence or Statement address is in a country outside the United States, the government of that country may impose a withholding tax on the Finance Charges due on your Account. You are liable for such tax and we may charge the amount of the tax to your Account if you do not pay.

**5.2: Other Users of the Account.** If you are not a Liable Party and you use this Account, you are liable for each transaction you make on the Account plus any Finance Charges, Other Fees and Charges, and expenses provided in this Agreement and related to such transactions. If you are an Authorized User (as defined in Section 7.9), your liability does not relieve any Liable Party under this Agreement from liability for the Authorized User's transactions until paid.

**Section 6: YOUR PAYMENTS**

**6.1: Promise to Pay.** You promise to pay us for all transactions on your Account for which you are liable under Section 5 or by law. If a bank branch or office sponsors your Account, you promise to pay it any unpaid Account balance it pays us within 30 days. If an Account payment is invalid, we will reverse any credit previously provided for such payment.

In addition, we will credit your payment to your Account upon receipt; however, we may not immediately make credit available on your Line for the amount of any payment received.

Where you have provided a cell phone number directly to us, or placed a cell phone call to us, you consent and agree to accept collection calls to your cell phone from us. For any telephone or cell phone calls we place to you, you consent and agree that those calls may be automatically dialed and/or use recorded messages.

**6.2: Allocation of Payments.** We apply payments in the following order: Finance Charges (current and prior Billing Cycles), prior Billing Cycle Other Fees and Charges, prior Billing Cycle transactions (promotional balances (including Balance Transfers), Purchases and Cash Advances), then current Billing Cycle Other Fees and Charges, current Billing Cycle transactions (promotional balances (including Balance Transfers), Purchases and Cash Advances). Based on this formula, if you accept a promotional offer, payments will be applied to a promotional balance (which are normally at a lower interest rate) prior to any existing or new non-promotional balance. Similarly, payments are applied to Purchases prior to any new or existing Cash Advance.

**6.3: Minimum Payment Due.** You will pay at least the Minimum Payment Due in the amount shown in your "Additional Disclosure" by the Payment Due Date on your Statement.

**6.4: Form of Payment.** For all amounts you owe on your Account, you will pay us in U.S. dollars. All payments (other than cash payments at our Banking Centers or ATM's) must be drawn from funds on deposit in a U.S. depository financial institution. We may, at our option, accept payments made in foreign currency or checks drawn on non-U.S. banks. If we do, we may impose service and collection charges. Our determination of service and collection charges will be final. We are not required to accept any payment that we deem to require special handling.

**6.5: Payments Marked "Paid in Full."** We may accept letters, checks or other types of payment showing "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Rights Summary" address on your Statement. Satisfaction of your debt for less than the full amount due requires a written agreement, signed by one of our authorized associates.

**Section 7: OTHER IMPORTANT INFORMATION**

**7.1: Signature.** You should sign the back of your Card as soon as you receive it to help protect your Account from unauthorized use. However, your liability under Section 5 does not depend on whether you sign your Card.

**7.2: No Security Interest on Purchases.** This Agreement does not grant us a security interest in Purchases you charge to your Account.

**7.3: Account Materials.** We may send Account materials (Cards, Statements and notices) to any Liable Party, and that person will be responsible for delivering those materials to the other Liable Parties and Authorized Users. Notice to any of you will be considered notice to all of you.

**7.4: Change of Personal Information.** You will notify us in writing immediately if you change your name, address or home or business telephone number. If we do not have a valid address because you failed to update your information, then you are responsible for obtaining any account materials we would normally have delivered to your address.

**7.5: Credit Information.** We may, periodically review your credit standing by obtaining information from credit reporting agencies and others concerning your accounts. You will provide updated financial information upon our request. In addition, we may report information about you to credit reporting agencies. You have the right to dispute the accuracy of information we have reported. If you wish to do so, write to: Bank of America, P.O. Box 1598, Norfolk, VA 23510 Attn: CBR Disputes (VA8-300-06-09). Please include your name, address, Account number, telephone number, social security number and a brief description of the problem. If available, please include a copy of the credit report in question.

**7.6: Stopping Payment on Checks.** To stop payment on a Check you write, you must call us at the Customer Service number shown on your Statement with all the following information: the exact dollar amount of the Check; the Check number; your Account number;

the name of the party to whom the Check was written and the name of the person who signed the Check.

We will stop payment on the Check if we receive your stop payment request by the business day before the day we pay your Check. The date we pay the Check may be before the date it posts to your Account. The stop payment order will remain effective for 6 months. You may write us to cancel the order at any time.

**7.7: Sharing Information.** We share information with our affiliates and others as described below:

**7.7.1: Sharing Information with Affiliates and Others.** We may share information that is solely about our transactions or experiences with you or your Account ("Experience Information") with our affiliates and others such as Visa, MasterCard, or your other creditors. We may also share with our affiliates non-experience information ("Non-Experience Information") such as information contained in your credit application or obtained by us from other sources. You can instruct us not to share Non-Experience information by sending a written request to: Bank of America, c/o Data Integrity, P.O. Box 27025, Richmond, VA 23261-7025. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.7.2: Sharing Information with Companies that Work for Us.** We may occasionally share information with outside companies that work for us. These companies act on our behalf and are obligated to keep the information that we provide to them confidential.

**7.8: Solicitations.** We carefully select quality products and services to offer you discount savings and other valuable benefits arranged specially for our cardholders. You have choices when it comes to learning about new offers and services. For example, you can choose not to receive notification about any offers made by mail, telephone or e-mail. To tell us your preferences, you can: (1) Visit your nearby Banking Center, (2) Call us at the telephone number listed on your Statement, (3) Send us an e-mail, or (4) Write to us at the address indicated in the Billing Rights Summary on your Statement. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.9: Authorized Users.** You may allow Authorized Users on your Account in the following ways: (1) by notifying us that you want someone added to your Account as an Authorized User; (2) by lending your Card or Account number to another; or (3) by any other ways in which you would be legally considered to have allowed another to use your Account or to be legally prevented from denying that you did so. You must think carefully before you allow anyone to become an Authorized User. By doing so, you authorize the person to use your Account to the same extent you can, including but not limited to making any Purchases, Cash Advances, Balance Transfers and allowing others to use your Account. Your Account does not permit you to limit the nature or amount of authority you give to any Authorized User and you will not attempt to do so. An Authorized User's authority will continue until you both notify us that you are terminating the authority and you physically retrieve the Card. If you cannot retrieve the Card, you will remain liable for any transactions that we cannot prevent after you notify us.

**7.10: Lost or Stolen Cards and Checks.** If your Card or Checks are lost or stolen, or if you think your Account is being used without your permission, you must notify us immediately by calling the "Lost or Stolen Card" number on your Statement.

**7.11: Transactions with Merchants**

**7.11.1: Return Policy.** If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", or "all sales final", you will be bound by that policy when you use your Account to buy goods or services from that merchant.

**7.11.2: Reservations.** When using your Account to make travel or lodging reservations, obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, obtain the merchant's cancellation number that it is required to give you. The merchant may charge you for a cancelled transaction unless you can provide us with the merchant's cancellation number.

**7.11.3: Recurring Transactions.** If you authorize a merchant to charge your Account for repeat transactions without your Card, you must notify the merchant when you want to discontinue the repeat transactions or if your Account is closed or a new Account number is issued by us.

**7.11.4: Dispute Assistance.** If you disagree with a transaction on your Statement or have a dispute with the merchant as a result of the transaction, you will provide information or assistance we reasonably request. Otherwise, you will pay us for any resulting loss we have unless we are prohibited by applicable law from holding you liable for our loss.

**7.12: Default.** Your Account is in default if you fail to comply with any of the terms of this Agreement or any other loan agreement with us or anyone else; in the event of your death, incompetency, bankruptcy, insolvency, fraud or misrepresentation; or if we reasonably believe that you will be unwilling or unable to pay debts you owe to anyone. If you are in default, we may close your Account without notice, and you must immediately pay your unpaid balance. To the extent not prohibited by law, if you are in default, you will pay our collection costs, attorney fees (including allocated costs for attorneys who are employed by us), court costs and all other expenses of enforcing our rights under this Agreement.

**7.13: Closing Your Account.** You may close your Account by notifying us. We may close your Account or suspend your credit privileges at any time without prior notice except as required by law. You will stop using your Account and destroy all Cards and Checks on your Account. All Liable Parties' and Authorized Users' liability will apply to all balances and transactions made on the Account even if they are made or processed after the date the Account is closed.

If we receive a request from any Liable Party to remove another Liable Party from the Account, we may honor or refuse the request without prior notice.

**7.14: Amendment of this Agreement.** We may amend this Agreement by changing, adding or deleting any term, condition, service or feature ("New Term") of your Account or of this Agreement at any time. We will provide you with notice of the amendment to the extent required by law. Unless we state otherwise, any New Term will apply to your Account's unpaid balance and to new activity on your Account. If the amendment includes any change to the rate or rates of periodic interest that applies to your existing balances, we will obtain your consent before that New Term becomes effective. If we need to do so, we may obtain your consent in any one or more of the following ways: (a) by your usage of the Account after we give you notice of the amendment; (b) by your failure to write to us on-time if we request that you write to us to reject a New Term; or (c) by your affirmative agreement which may be obtained verbally, in writing or electronically. Any other term in the amendment will become effective without your consent, although you may be able to avoid a fee or charge by not making the type of transaction to which it applies after the effective date of the amendment.

**7.15: Foreign Currency Transactions/Fees.** If you make a transaction in currency other than U.S. dollars, Visa or MasterCard will convert the charge or credit into a U.S. dollar amount. The conversion rate on the processing date may differ from the rate on the date of your transaction.

The exchange rate used by Visa will either be (i) a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may differ from the rate Visa receives, or (ii) the government-mandated rate in effect for the central processing date. MasterCard will use an exchange rate of either (i) a wholesale market rate or (ii) a government-mandated rate. Visa and MasterCard will no longer add a 1% adjustment factor and show it as part of the U.S. dollar amount. We will charge you a Foreign Currency Conversion Fee for each converted transaction in the amount of 3% of the converted U.S. dollar amount. This amount will be added together for each foreign currency transaction made during the billing cycle and the total amount will appear on your billing statement as a "Foreign Currency Conversion Fee."

**7.16: Telephone Monitoring.** We may listen to and record telephone calls between you and us for the purpose of monitoring and improving the quality of service you receive.

**7.17: Enforceability.** Our failure to exercise any of our rights under this Agreement will not waive any of our rights in the future. If any terms of this Agreement are found to be unenforceable, all other provisions will remain in full force.

**7.18: Governing Law.** THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW;

**7.19:** **Arbitration.** Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents, or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election by either you or us, be resolved by binding arbitration. Arbitration shall take place before a single arbitrator on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

Arbitration, including selection of an arbitrator, shall be conducted in accordance with the rules and procedures for initiating arbitration of the American Arbitration Association ("AAA"). You may contact AAA at 335 Madison Avenue, Floor 10, New York, NY 10017-4604 or http://www.adr.org, to obtain rules and forms to initiate arbitration. If AAA is unable or unwilling to serve as the provider of the arbitration, or enforce any of the provisions of this agreement, we may substitute another national arbitration organization with similar procedures. This arbitration section of this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Judgment upon arbitration may be entered in any court having jurisdiction. Arbitration shall be conducted in the federal judicial district in which your billing address is located at the time the claim is filed. If we request arbitration, we will advance applicable AAA fees and expenses. If the arbitrator rules in favor of one party against the other, the other party shall pay all reasonable attorney's fees and costs of the action on behalf of both parties (including any fees and expenses paid by one party on behalf of the other) unless the arbitrator or court decides such an award would cause a substantial injustice based on the facts and legal arguments set forth in the action.

YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.

**7.20:** **Payment by Phone.** When using the Payment by Phone option, you authorize us to initiate electronic payments from your designated account at the financial institution you indicate for the purpose of making any payment on your Account. You must authorize the timing and amount of each payment transaction by using your Payment by Phone Personal Identification Number (PIN).

**7.20.1:** **Effective Date of Payment.** Payment will occur on the date you requested.

**7.20.2:** **Dishonored Request for Payment.** If a payment is dishonored for any reason, including insufficient funds, we, in accordance with your Cardholder Agreement, and your financial institution may assess a fee. If a payment is dishonored by your financial institution for "insufficient funds", we will attempt to initiate the electronic payment one more time before deeming the payment unpaid. You understand that if a payment is dishonored, your Account will be considered due for that payment (if the minimum payment due has not been met), and other payment arrangements will need to be made.

**7.20.3:** **Revocation of a Payment.** You have until 4:00 PM EST the day of the scheduled payment to cancel or revoke that payment.

**7.20.4:** **Payment by Phone Personal Identification Number (PIN).** You acknowledge the PIN issued by us to authorize and authenticate a Payment by Phone transaction will be kept confidential.

**7.20.5:** **Authorization and Security Procedure.** A Payment by Phone transaction will not occur unless you initiate the payment through the Bank's automated response unit or speak with a Bank customer service representative. You agree that the security procedures followed by the Bank to authenticate your consent to a Payment by Phone transaction, although not in writing, are reasonable, and agree to be bound by them as if you had signed this Authorization in writing.

## BILLING RIGHTS SUMMARY

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us in a separate letter at the address indicated in the Billing Rights Summary on your Statement. Write us as soon as possible. We must hear from you no later than 80 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notices**

We must acknowledge your letter within 30 days, unless we corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.